UNITED STATES of America

v.

**Manuel Jose CASTILLO–BOURCY, Juan Karamanites, Carlos Eleta–Almaran, Defendants.**

**Cr. No. 89–45–MAC (WDO).**

United States District Court, M.D. Georgia, Macon Division.

May 3, 1989.

Deborah Griffin Fowler, Asst. U.S. Atty., Macon, Ga., for plaintiff.

Barry Slotnick, New York City, for defendants.

## ORDER

OWENS, Chief Judge.

On April 6, 1989, defendant Carlos Eleta–Almaran, a citizen of Panama, was arrested in Macon, Georgia on a criminal complaint[1] alleging that from or around November 6, 1988, until April 6, 1989, defendant Eleta conspired with defendants Manuel Jose Castillo–Bourcy, Juan Karamanites and others, both known and unknown, to possess with intent to distribute approximately 600 kilograms of cocaine, in violation of 21 United States Code § 846 in connection with § 841(a)(1). On April 7 defendant Eleta and the alleged co-conspirators appeared before Circuit Judge Anderson for an initial appearance hearing and therein joined with the United States in a motion for a continuance until Monday, April 11, both of the initial appearance hearing and of the requested detention hearing. *See* 18 U.S.C. § 3141, *et seq.* On April 11, those hearings were held before Magistrate Hicks with defendant Eleta represented by retained counsel and the other defendants represented by appointed counsel.

At the beginning of this hearing, the United States and defendant Eleta presented to the magistrate an agreement for the defendant's release providing as follows:

(1)

That CARLOS ELETA–ALMARAN will sign an eight million dollar ($8,000,000.00) bond secured by the deposit of two hundred thousand dollars ($200,000) cash in the registry of the Court and by the transfer of his stock in General Mills, Inc., Panama (holding 48% of the stock) worth approximately $2,000,000; in National Tobacco Company, Inc. (Tabalera National), Panama (holding 12% of the stock) worth approximately $500,000; in Calox Panamania SA (holding 50% of the stock) worth approximately $1,500,000; and in Cervezeria Baru, Panama (holding 20% of the stock) worth approximately $2,000,000, to the United States pending the disposition of his case; and that he hereby consents to immediate forfeiture to the United States of the eight million dollars ($8,000,000.00) and the stock should he fail to appear as directed.

(2)

That he will surrender his passport and agree to temporarily reside in the Southern District of Florida pending the disposition of his case and not travel outside the Southern District of Florida without specific permission from the U.S. Probation Office and that he agrees to comply with release supervision as directed by the U.S. Probation Office in the Southern District of Florida.

(3)

That he will agree to a trial in absentia should he fail to appear as directed; and that he consents to immediate extradition from any country without going through any court proceeding.

In presenting this agreement to the magistrate, Mr. Eleta waived his preliminary hearing; the government withdrew its motion for detention of Mr. Eleta pending trial, and the Assistant United States Attorney advised the magistrate as follows:

Implicit in the agreement that we've entered into with Mr. Eleta and that we would ask the Court to accept, is that whatever they produce in terms of bond would be genuine and could be verified by this Court; that the assets would be valuable and would not lose their value by virtue of a transfer into American hands and that the assets would be negotiable in the event that the defendant should abscond, and we would present the agreement to the Court, a copy of which has been provided to the defendant and the agreement has been signed by the defendant, his attorney, and the United States Attorney, also.

---

1. The above-named defendant has subsequently been charged in a three (3) count indictment with conspiring to import cocaine in violation of 21 U.S.C. § 963, in conjunction with 21 U.S.C. § 960(a), with conspiring to possess and aiding and abetting the conspiracy to possess cocaine in violation of 21 U.S.C. § 846, in conjunction with 21 U.S.C. § 841(a)(1), and with conspiring to launder the proceeds of unlawful activity in violation of 18 U.S.C. § 1956 and 18 U.S.C. § 371. The indictment was returned by the Grand Jury on April 27, 1989.

After hearing at great length from defendant's counsel, the magistrate refused to accept the agreement, saying in effect that the defendant had failed to convince the court that the tendered Panamanian assets (1) would be valuable to the United States, (2) would retain their value if transferred to the United States and (3) would be negotiable if the defendant were to abscond. In reaching and announcing that decision, the magistrate expressed grave concern over the commonly known political instability in the Republic of Panama and the effect that instability might have upon the tendered agreement; he noted that the defendant is a wealthy foreign national facing the possibility of a lengthy period of imprisonment in this country, and the magistrate observed that the immense wealth of the defendant enables him to travel easily throughout the world. Further, the magistrate questioned the value to the United States of the defendant's waiver of extradition. Having made such comments, the magistrate conditioned the defendant's release pending trial upon the defendant furnishing an $8,000,000.00 secured bond that may be satisfied by the deposit of $3,000,000.00 cash with the clerk of this court.

Defendant then moved the court, pursuant to 18 U.S.C. § 3145(a)(2),[2] for an order amending the previously set conditions of release so as to permit the defendant to be released pending trial upon satisfying the conditions memorialized in the agreement entered into with the United States. That motion came on to be heard in Valdosta, Georgia on Monday, April 17, at which time counsel for defendant presented evidence by affidavits and letters of both the value and the transferability of the offered stock of Panamanian corporations and of defendant's good character. Counsel then vigorously urged the court to release the defendant on the conditions set forth in his agreement with the United States. The United States in response stated its continuing willingness to abide by that agreement, subject however to the already quoted caveat "that whatever they produce ... would be genuine and could be verified ...; that the assets would be valuable and would not lose their value by virtue of a transfer into American hands and that the assets would be negotiable in the event that the defendant should abscond...."

At the conclusion of the hearing the court requested counsel to submit a financial statement of the defendant showing personal assets, liabilities and income for the past five years in the form usually utilized by certified public accountants. Since then various exhibits prepared by defendant's agents have been submitted. The court could have but has not requested further information as to the defendant's personal finances because, like the magistrate, this court in the person of the undersigned judge has certain concerns which the submission of additional financial information would not alleviate.

The defendant and the government having agreed to an $8,000,000.00 secured bond, the only 18 U.S.C. § 3142(c) release condition that is before the court for review is the requirement that defendant Ele-

---

**2.** 18 U.S.C. § 3145 provides as follows:

**§ 3145. Review and appeal of a release or detention order**

(a) **Review of a release order.**—If a person is ordered released by a magistrate, or by a person other than a judge of a court having original jurisdiction over the offense and other than a federal appellate court—

(1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release; and

(2) the person may file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release.

The motion shall be determined promptly.

(b) **Review of a detention order.**—If a person is ordered detained by a magistrate, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

(c) **Appeal from a release or detention order.**—An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title. The appeal shall be determined promptly.

ta furnish $3,000,000.00 cash to secure the agreed upon $8,000,000.00 bond. Defendant Eleta naturally desires to furnish only the $200,000.00 cash initially indicated in the agreement rather than the $3,000,-000.00 figure set by the magistrate. The review of that condition, however, requires this court to consider as well the opinion of the magistrate that the implicit understandings on which the agreement of the defendant and the government rests are not satisfied by the offered securities.

The standard for review of the magistrate's order is set forth in *United States v. Thibodeaux,* 663 F.2d 520 at 522 (5th Cir.1981),[3] in which the court stated:

Few reported decisions have construed the ambit of the district courts' amendment authority under 18 U.S.C. § 3147(a). Thus district courts have assumed, without stating so explicitly, that their right to amend the magistrate's order was broader than the scope of the appellate review specified in 18 U.S.C. § 3147(b). *E.g. United States v. Ellis DeMarchena,* 330 F.Supp. 1223, 1226–27 (S.D.Cal.1971). This is the correct view. *See Grimes v. United States,* 394 F.2d 933 (D.C.Cir.1967). The statutory scheme adopted in 18 U.S.C. § 3147 confers a responsibility on the district court to reconsider the conditions of release fixed by another judicial officer under 18 U.S.C. § 3146(d) as unfettered as it would be if the district court were considering whether to amend its own action. It is not constrained to look for abuse of discretion or to defer to the judgment of the prior judicial officer. These latter considerations would be pertinent when, under section 3147(b), the district court's action is called before the court of appeals.

In performing the responsibility to reconsider the conditions of release this district judge has carefully considered all that was presented to the magistrate and all that was thereafter presented to this court in support of defendant's motion. Feeling in no way constrained to defer to the magistrate's judgment, this judge nevertheless concludes that an $8,000,000.00 bond secured by at least $3,000,000.00 cash is the minimum condition of release required to assure the presence of defendant Eleta at trial.

The conclusion that such a large bond is required results from many considerations, paramount of which is the commonly known political hostility between General Noriega, Panama's *de facto* leader who has been indicted in this country on drug charges, and the United States of America. Even if the defendant were to be permitted to transfer his business interests (now valued at approximately $6,000,000.00 by his certified public accountant and comptroller) to the United States as security for his appearance at trial, the government of the Republic of Panama could refuse either to recognize or to effect such a transfer, thereby nullifying the transfer and putting the defendant in position to fail to appear without the possibility of loss of his business interests. The uncertainty of the situation undermines the agreement executed by the defendant and the United States, and the nature of the political situation places the risk of defendant absconding as much upon the United States as upon the defendant. This court cannot find that the assignment of defendant's assets reasonably assures defendant's presence at trial.

Another concern is the obvious ability of the defendant, a wealthy, world-travelling business executive, to travel at will anywhere he wishes to go. At age 70, facing possible long-term and potentially life-spanning imprisonment, only the loss of at least $3,000,000.00 seems to this court a sufficient deterrent to such travel.

A further concern is the inclusion in the agreement between the defendant and the government of provisos that the defendant agrees to a trial in absentia if he fails to appear and that the defendant consents to immediate extradition from any country without going through any court proceeding. The purpose of setting conditions of

---

**3.** *Cf. United States v. Medina,* 775 F.2d 1398 (11th Cir.1985); *United States v. Gaviria,* 828 F.2d 667 (11th Cir.1987).

release on bail pending trial is to secure the defendant's presence at trial rather than to secure his consent to be tried in absentia. Extradition of defendant Eleta from the Republic of Panama, as shown by the inability of this country to secure the presence of defendant Noriega, does not appear to this court to be a realistic possibility. Such provisions, then, are as a practical matter useless.

Finally, with due respect to the contentions of counsel for the defendant, the business assets offered by the defendant for transfer to the United States as security may have a financial statement book value of some $6,000,000.00, but those assets do not have a fair market value of that amount because the offered securities are not traded on any world market such as the New York Stock Exchange. Defendant has presented no evidence that the defendant's assets are valuable to anyone other than the defendant, or, that if valuable, those assets when and if transferred to the United States would not lose their value.

The defendant has presented considerable evidence to this court regarding his financial status. However, this matter is not merely an abstract examination of such status; rather, this matter involves the establishment of certain conditions which would reasonably assure the defendant's presence at trial. Though defendant's assets may be valuable to him in Panama, those same assets are virtually inaccessible to the United States government, thus making the pledge of such assets illusory. This court, in the exercise of its responsibility to set conditions of release that will reasonably assure defendant Eleta's presence at trial, finds that the financial conditions of release set by the magistrate, rather than the illusory promises made in the offered agreement, are the minimum conditions that will accomplish the above-stated purpose. Thus, those conditions as set by the magistrate shall remain intact.

SO ORDERED, this 3rd day of May, 1989.